## COUNTIES OF HAMPSHIRE, FRANKLIN AND HAMPDEN, SEPTEMBER TERM 1849, AT NORTHAMPTON

PRESENT:

Hon. LEMUEL SHAW, CHIEF JUSTICE.
Hon. SAMUEL S. WILDE,
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF, } JUSTICES.
Hon. RICHARD FLETCHER,

[The cases from the county of Franklin, commencing on page 114, were argued at the sittings in Boston, in January, 1850.]

AUSTIN SMITH, Administrator, *vs.* THE PRESIDENT, DIRECTORS & COMPANY OF THE NORTHAMPTON BANK.

Where bank shares are seized and sold by a collector of taxes, in the manner provided by the act of 1846, c. 195, on a warrant from assessors having jurisdiction of the subject matter, and *prima facie* a lawful authority to issue such warrant, and there is nothing on the face of the proceedings to indicate any want of jurisdiction, or any error or defect therein; the cashier of the bank is authorized (if not required) to issue a new certificate of such shares to the purchaser, who will thereupon become entitled to accruing dividends, whether the tax, for the payment of which the shares are sold, be rightly assessed or not.
In December, 1845, O. S. died, leaving a will, in which A. S. was named as executor, by whom the will was presented for probate; but the validity thereof being

Smith *v.* Northampton Bank.

controverted, A. S., in December, 1846, was appointed special administrator ; and the validity of the will being established in August, 1847, A. S. was appointed executor under the same; The assessors of the town of H., in which the deceased last dwelt, having assessed a tax to A. S., in May, 1846, for the estate of O. S. in his hands as executor, it was held, that under the peculiar circumstances of the case, the same was rightly assessed.

THIS action was brought by the plaintiff, as the special administrator of the estate of Oliver Smith, late of Hatfield, deceased, for the recovery of the dividends on certain shares in the capital stock of the defendants, which had been seized and sold, as the defendants alleged, for taxes, by a collector of Hatfield, before the dividends in question had accrued.

On the trial, which was in the court of common pleas, before *Wells*, C. J., it was in evidence, or admitted, that Oliver Smith died at Hatfield in December, 1845, having made a will by which he appointed the plaintiff executor and trustee ; that, the validity of the execution of the will being contested in the probate court, the plaintiff was appointed special administrator in December, 1846 ; that, the will being subsequently established, the plaintiff was duly appointed executor thereof, in August, 1847 ; that, previous to his appointment as special administrator, the plaintiff sold a few hundred dollars worth of the personal estate of the testator, such sale being for the benefit of the estate, and sanctioned by those interested, so far as their assent could be obtained ; that a tax was assessed by the assessors of Hatfield upon the estate of Oliver Smith, in May, 1846 ; and that certain shares in the capital stock of the defendants were seized and sold to pay the same in the months of February and March, 1847.

The writ was dated May 24th, 1847 ; and it was admitted, that the dividends sued for had been regularly demanded by the plaintiff, previously to the commencement of the action.

The defendants filed a specification of their defence, which was admitted as a statement of facts, and from which it appeared, that, on or about the 27th of February, 1847, the collector of taxes for the town of Hatfield certified to the defendants' cashier, that he had seized seventeen shares

of their capital stock belonging to the estate of Oliver Smith, deceased, for the payment of a tax in his hands for collection against the personal estate of said deceased, in the hands of Austin Smith, special administrator, and executor and trustee under his will, and amounting to the sum of $1602, being the town and county tax assessed upon said estate, said Austin having refused to pay the same; that this certificate was made on an attested copy, under the hand of the collector, of the warrant issued to him, on which the shares were seized; that the attested copy so left with the defendants' cashier purported to be a copy of a legal warrant duly issued by the assessors of the town of Hatfield, for the collection of taxes; that, afterwards, on the 5th of March following, the collector left with the officer of the defendants, whose duty it was to record transfers of shares, an attested copy of the said warrant, and of his return thereon; that from the collector's return, it appeared, that fourteen of the shares were seized on the warrant, and sold in the manner and subject to the rules prescribed by law for the sale of goods by collectors of taxes in like cases, namely: the said Austin having refused to pay the tax after demand previously made, the collector, on the said 27th of February, gave notice of the sale of the said fourteen shares, by posting up a notification thereof at the store of Josiah Brown, a public place in Hatfield, and on the 5th of March following sold the same at public auction to Nancy Dickinson, she being the highest bidder therefor, for the sum of $119 a share, amounting in the whole to the sum of $1696, leaving an overplus to be returned of $42·86, after payment of the taxes and charges of collection; and that the said fourteen shares were afterwards, on the 25th of March, transferred to Nancy Dickinson, the purchaser, and a certificate thereof made to her.

The specification of defence also set forth a like seizure and sale of other six shares of the capital stock of the defendants belonging to the estate of Oliver Smith, for the payment of taxes due therefrom.

It appeared, that the taxes in question were assessed to

" Austin Smith who is named as executor of an instrument purporting to be the last will and testament of Oliver Smith, late of Hatfield, deceased, for the estate of the said deceased, in the hands and possession of the said Austin Smith."

It appeared, further, that the assessors and collector of the town of Hatfield for the year 1846, were regularly chosen and duly sworn ; that the taxes in question were regularly entered on the tax list against Oliver Smith's estate ; that the warrant of the assessors to the collector, and his returns and doings thereon, were in due form ; and the handwriting of the collector, and his acting as such *de facto*, were not denied.

The dividends sued for were declared in April, 1847, and were paid by the defendants to the purchasers of the shares at the collector's sale.

The presiding judge being of opinion, that upon these facts the plaintiff was entitled to recover, the jury returned a verdict in his favor, and the defendants thereupon alleged exceptions.

*W. Allen, Jr.,* for the defendants.

I. The leaving of the copies of the warrants and returns with the defendants, by the collector, justified them in paying after accruing dividends to the purchasers therein named. *Waldron* v. *Lee*, 5 Pick. 323 ; *Stedman* v. *Eveleth*, 6 Met. 114. Even if the collector exceeded his power in making the sale, as he had jurisdiction of the subject matter, his return is conclusive in favor of the bank. *Nichols* v. *Thomas*, 4 Mass. 234, by Parsons, C. J.; *Wilmarth* v. *Burt*, 7 Met. 257 ; *Upton* v. *Holden*, 5 Met. 360 ; *Albee* v. *Ward*, 8 Mass. 79, 85, 86, and cases cited. The act required of the bank by the statute is a mere formal act, to give effect to the act of the collector. See Rev. St. *c.* 97, § 39. There being no bad faith or want of diligence shown, the defendants will not be charged by reason of a want of jurisdiction appearing on the face of the papers, unless it be a clear case. *Cary* v, *Daniels*, 5 Met. 236.

II. The tax was rightly assessed to the plaintiff:    1. Be-

cause the property was in his possession. Rev. Sts. *c.* 8, § 5; *Tyler* v. *Hardwick*, 6 Met. 470; Rev. Sts. *c.* 7, §§ 2, 4; *Cook* v. *Leland*, 5 Pick. 236. If the plaintiff was not liable to be taxed for this estate, still, being an inhabitant of Hatfield, liable to be taxed there to some extent, his only remedy was by application for an abatement. Rev. Sts. *c.* 7, §§ 19, 23, 24. He is the same "person," although called "executor" or "trustee." *Osborn* v. *Danvers*, 6 Pick. 98. He would be authorized to pay out of the estate taxes assessed on him by virtue of his being in possession. Rev. Sts. *c.* 64, §§ 11, 12; *Stearns* v. *Stearns*, 1 Pick. 157; *Mitchell* v. *Lunt*, 4 Mass. 654; *Shillaber* v. *Wyman*, 15 Mass. 322. 2. As special administrator, he had authority to pay the taxes. Rev. Sts. *c.* 64, §§ 6-10. 3. As executor and trustee under the will, he had authority to pay the tax, either by relation from his subsequent qualification as executor; *Jewett* v. *Smith*, 12 Mass. 309; *Shillaber* v. *Wyman*, 15 Mass. 322; *Andrews* v. *Gallison*, 15 Mass. 325; *Wilson* v. *Shearer*, 9 Met. 504; 23 Pick. 129; Rev. Sts. *c.* 64, § 5; *c.* 63, § 2; or because the property vested in him at the instant of the testator's death. 1 Dane's Ab. *c.* 29, *art.* 2, § 2; Bac. Ab. Executor, E. 14; Com. Dig. Administrator, B. 9; *Johns* v. *Johns*, 1 McCord, 132; *Seabrook* v. *Williams*, 3 McCord, 371; *Strong* v. *Perkins*, 3 N. H. 517; *Judson* v. *Gibbons*, 5 Wend. 224.

III. The sale of the shares was lawful. *St.* 1846, *c.* 195; Rev. Sts. *c.* 97, § 36; *St.* 1804, *c.* 83, § 1; *St.* 1843, *c.* 98; Rev. Sts. *c.* 38, § 16; *c.* 8, §§ 3, 7, 32, 33; *St.* 1785, *c.* 50, § 6; Rev. Sts. *c.* 8, § 15; *Crapo* v. *Stetson*, 8 Met. 393; *Jewett* v. *Smith*, 12 Mass. 309; *Wilson* v. *Shearer*, 9 Met. 504; *Rockwood* v. *Allen*, 7 Mass. 254; *Grosvenor* v. *Gold*, 9 Mass. 209; *Williams* v. *Holden*, 4 Wend. 223; Rev. Sts. *c.* 7, §§ 9, 10.

*C. Delano*, for the plaintiff.

I. In this commonwealth, there is no power to tax a dead man's estate, until after the appointment of his executor or general administrator. Whatever power exists to tax or to collect taxes, must result from statute. *Crapo* v. *Stetson*, 8 Met. 393; *Andover & Medford Turnpike* v. *Gould*, 6 Mass.

**1***

40, 44; *Caldwell* v. *Eaton*, 5 Mass. 399, 403.   Rev. Sts. *c.* 7, § 10, *cl.* 7, providing that " personal estate in the hands of executors or administrators, *undistributed*, shall be assessed *to the* executors and administrators," not only implies that the estate is in process of distribution, as well as in the hands of an executor or administrator capable of making distribution, but requires the assessment to be directly to the executor or administrator, thus capable.    There must be some representative of the estate, "having an opportunity to furnish a list of taxable property to the assessors ;" *Cook* v. *Leland*, 5 Pick. 236 ; and through whom the collector can enforce payment of the tax ; which must be either by action or distress.    1.  A special administrator, at least prior to 1848, was not liable to an action for a tax.   Rev. Sts. *c.* 64, § 10 ;  Rev. Sts. *c.* 68, § 1 ; and this case is not within Rev. Sts. *c.* 8, § 15 ;   *St.* 1789, *c.* 4, under which *Cook* v. *Leland* was decided.   Previously to the revised statutes, a special administrator bore the closest analogy to the administrator *pendente lite* of the English law ; he was authorized to pay debts and liable to suits for not paying them.    *St.* 1834, *c.* 174 ; 1 Sch. & Lef. 254 ; *Woollaston* v. *Walker*, 2 P. Wms. 576.   But under the revised statutes he is a mere receiver " to collect and preserve " deceased's estate.   Rev. Sts. *c.* 64, §§ 6 – 9, and commissioners' notes ; Williams, Off. Ex. *c.* 14 ; 2 Inst. 398.   *St.* 1848, *c.* 235, is a legislative declaration that no power to sue special administrators for taxes existed previously.   2.  This tax could not be enforced by distress.   He is not a "stockholder," nor can he be deemed guilty of a " neglect and refusal " to pay ; for he has no power to adjust priorities ; *Wilson* v. *Shearer*, 9 Met. 504 ; nor can he decide upon the amount of " debts due to the estate more than it is indebted for," within the Rev. Sts. *c.* 7, § 4.

*St.* 1848, *c.* 235, was evidently intended by the legislature to cure the defect in the Rev. Sts. *c.* 8, § 15, as to the collection of a tax "lawfully assessed," after the decease of the testator, and does not extend to special administrators ; and the proviso in the statute, that it shall not affect legal priorities, prevents its operating on such administrators.

II. If the bank, having the option to surrender the shares or not, do surrender them ill advisedly at the demand of third persons, it does so at its peril. The only person entitled to justify under legal process is an officer of the law; and in order to justify him, the precept must issue from a lawful jurisdiction; it must be on its face apparently lawful; and it must be executed in a regular and lawful manner. *Sanford* v. *Nichols*, 13 Mass. 286, 288; *King* v. *Whitcomb*, 1 Met. 328, 331; *Stetson* v. *Kempton*, 13 Mass. 272, 282; *Upton* v. *Holden*, 5 Met. 360, 362; *Wilson* v. *Shearer*, 9 Met. 504; *Nichols* v. *Thomas*, 4 Mass. 232. The English law of poor rates is analogous. By Sewall, J., in *Colman* v. *Anderson*, 10 Mass. 105, 118. Yet if a poor rate has been charged upon property not taxable, the justice granting the warrant of distress, and the collector executing it, are both liable. *Neave* v. *Weather*, 3 Ad. & El. N. S. 984. Even if the bank were entitled to the same immunity as the collector, it would not be justified in this case, for the assessment, as recited on the face of the warrant and certificate, purports to be on a dead man's estate, and does not purport to be directly against any person living. So that it appeared on the face of the papers not only that the distress, but also the tax itself, was illegal and both collector and bank were bound to know the law The bank is not entitled to the immunities which an officer of the law may sometimes claim, but is bound to ascertain and take notice of all defects, from the assessment down to the distress and sale, whether apparent or latent. *St.* 1846, *c.* 95; Rev. Sts. *c.* 97, § 36, *et seq.*; *c.* 90, § 36, *et seq.*; *Russell* v. *McLellan*, C. C. Oct. T. 1848. *Chase* v. *Merrimack Bank*, 19 Pick. 564, where the point now contended for was not even raised. *Howe* v. *Starkweather*, 17 Mass. 240; *Titcomb* v. *Union Ins. Co.* 8 Mass. 326; Parsons, C. J., in *Caldwell* v. *Eaton*, 5 Mass. 399, 404.

The doctrine of relation will not be so applied as to take away the rights of the intestate. Co. Lit. 150, *a;* *Leber* v. *Kauffelt*, 5 W. & S. 440, 445. It makes no difference that the special administrator was finally appointed executor. *Stratton* v. *Ford*, 2 Lee, 49. The Rev. Sts. *c.* 8, § 5, cannot

apply where the person intended to be taxed had no right to intermeddle with the estate.   It is true that an executor *may* do many things, but he does them all at the peril of being able to prove the will. and therefore he is *obliged* in law to do nothing.   And if he has intermeddled and does not prove the will, the law deems him a wrong-doer, capable of purging such acts only as are clearly beneficial to the estate.   Except with reference to future ratification by being clothed with legal authority, the plaintiff had none of the rights or liabilities of a stockholder.

*C. P. Huntington*, in reply.

If it be true that the estate had no legal representative, and therefore could not be taxed, then any executor, by neglecting to prove the will until after the 1st of May, might shield the estate from taxation.

I.   The estate was legally assessed.   Mass. Const. *c.* I. § 1; Rev. Sts. *c.* 7, §§ 1, 10, *cl.* 7; *Cook* v. *Leland,* 5 Pick. 236. There was no person here capable of furnishing a list.   The tax might even have been assessed against an executor *de son tort.*   Rev. Sts. *c.* 64, §§ 11, 12.   See also Plym. Col. Laws, *c.* 7, § 12, *p.* 268; Anc. Char. 696.   If this were a tax assessed before the death of the testator, the reasoning of the court in *Wilson* v. *Shearer* might apply; but being assessed after the death, it is to be treated as an expense of administration, or as a lien or incumbrance on the estate, which his power to collect and preserve the effects would authorize him to pay off.   *St.* 1823, *c.* 144, § 1; Rev. Sts. *c.* 66, § 24, and commissioners' notes.   The form of bond required by the Rev. Sts. *c.* 64, § 7, shows that a special administrator has power to hand in a list, make schedules, take an inventory, and strike a balance between "bills receivable and bills payable," under the Rev. Sts. *c.* 7, § 4.   His exemption, under Rev. Sts. *c.* 64, § 10, from actions by creditors of the deceased, does not extend to taxes imposed after the death of the latter.   It is no objection that the warrant names him executor.   Rev. Sts. *c.* 8, § 5; *Tyler* v. *Hardwick,* 6 Met. 470.

II.   The bank shares were liable to seizure on the warrant.

A special administrator, who after notice and demand refuses to pay, is guilty of a "neglect and refusal" within the *St.* 1846, *c.* 195. The plaintiff was a trust stockholder of the shares seized on the warrant.

III. The collector was justified by his warrant. *Colman* v. *Anderson*, 10 Mass. 105, 118 ; *Sanford* v. *Nichols*, 13 Mass. 286, 288 ; *Waldron* v. *Lee*, 5 Pick. 323, 328 ; *Sprague* v. *Bailey*, 19 Pick. 436 ; *Wilmarth* v. *Burt*, 7 Met. 257.

IV. The bank were bound to issue the certificates to the purchaser. Rev. Sts. *c.* 97, § 39 ; *St.* 1846, *c.* 195, § 2 ; *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90, 97, 100 ; *Howe* v. *Starkweather*, 17 Mass. 240, 244 ; *Hussey* v. *Manuf. & Mech. Bank*, 10 Pick. 415, 420 ; *Plymouth Bank* v. *Norfolk Bank*, 10 Pick. 454, 459 ; *Quiner* v. *Marblehead Ins. Co.* 10 Mass. 476. In *Chase* v. *Merrimack Bank*, the point was obviously waived, for the purpose of getting a decision on the main question. *Titcomb* v. *Union Ins. Co.*, *Caldwell* v. *Eaton*, and *Russell* v. *McLellan* were all cases involving the regularity of the proceedings of the officer, and not applicable.

SHAW, C. J.* This is an action of assumpsit brought by Austin Smith, as special administrator of the goods and estate of Oliver Smith, deceased. The suit was commenced in May, 1847, after the will of Oliver Smith, by which the plaintiff was appointed executor, had been offered for probate, and previous to August, 1847, when it was finally proved and allowed.

The action is brought to recover the dividends on certain shares in the capital stock of the defendants which were declared in April, 1847. The actual sum demanded in this suit is a small one, being only one semiannual dividend ; but the question involves the title to the shares themselves. These shares had been sold under the circumstances stated in the bill of exceptions, at some time previous to the declaration of this dividend ; and certificates had been issued to the purchasers, to whom the dividend was paid ; and the first question is, whether the sales were rightful, and transferred

---

* Mr. Justice DEWEY did not sit in this cause.

the property in such shares to the purchasers. If they did, of course, the plaintiff is not entitled to recover; for if he were, it would follow, that the defendants might be legally liable to two different parties, at the same time, for dividends on the same shares.

The defendants contend, that they have no means of knowing whether the tax was rightly assessed or not, and are not bound to litigate that question. On the contrary, we are pressed with the consideration, that, unless an owner can hold the bank responsible, a tax may be assessed upon any man, without right, and he be divested of his property by the doings of an executive officer, without notice.

The question is certainly not without difficulty; but the difficulty is rather theoretic than practical; inasmuch as there must be a demand made for the tax, which will put the owner on his guard, and perhaps enable him to take measures for his relief.

In the present case, the taxes were assessed in May, 1846, to " Austin Smith, who is named as executor of an instrument, purporting to be the last will and testament of Oliver Smith, late of Hatfield, deceased, for the estate of the said deceased, in the hands and possession of the said Austin Smith." It would appear, *prima facie*, that this was a good assessment to Smith, as executor, and the warrant followed the assessment.

By the statute of 1846, *c.* 195, the collector has the same authority to take bank shares, as he has to take goods, for the payment of taxes, and to dispose of and sell the former, in the same manner, as by law the latter are directed to be sold. The purchaser is then entitled to a certificate in the same manner as when a sale of bank shares is made on execution. It appears, by the return of the officer, that he gave due notice to the cashier of his having seized the shares after an ineffectual demand on the plaintiff for the tax ; that he left a certified copy of his warrant with the cashier ; and that he advertised and sold the shares, and again left a certificate of that fact, with an attested copy of his warrant and return, with the officer whose duty it was to record the

transfer of shares, namely, the cashier. The statute also provides, that upon such proceedings being had, and such certificates left, the purchaser shall be entitled to a certificate of the shares purchased in due and proper form. Such certificates were given, and the court are of opinion, that the officer of the bank having complied with the directions of the law, the defendants, the bank, in order to defend themselves against this claim, are not bound to go further and show that the tax in question was rightly assessed to the plaintiff as such executor.

The collector had an apparently good warrant of distress. It emanated from a board of assessors having lawful authority to issue it, that is, having jurisdiction of the subject matter, and *prima facie* a lawful authority; and there was nothing on the face of the documents to indicate any want of jurisdiction, or any error or defect in the proceedings. It seems, therefore, to this court, that this was a case, in which, if the cashier of the defendants was not bound to issue the new certificates to purchasers, he was at least authorized to do so; and, therefore, that the defendants were not liable to pay the dividends to the plaintiff, and that this action against the bank cannot be maintained.

The other question, whether this tax was rightly assessed by the assessors of Hatfield, was argued much at large; and the court have been somewhat urgently pressed to express an opinion upon it, though not, perhaps, in strictness, necessary to the decision of the present case. The question is one of great doubt and difficulty; and one which affects the interest of parties not in form before the court; though, it is probable, that they are in fact represented. It was stated in the argument, that the defendants in this action had been indemnified; though it was not stated by what party, nor does any fact of that sort appear in the record. Under these circumstances, I am instructed to express the opinion of a majority of the court, (one member not sitting in the cause,) an opinion formed not without some hesitation, that, under the peculiar circumstances of the present case, the tax was rightly assessed to the present plaintiff, as the executor of Oliver Smith's will.

It may be well admitted, that the liability of property to taxation in this commonwealth depends upon the provisions of statutes ; but the statutes upon this subject, like all others, must be construed with a reference to the reasons and principles of the common law, and with a just regard to the subject matter to which they apply.

The general policy of the law is, that all property, not specially exempted, shall be subject to taxation. Rev. Sts. *c.* 7, § 2. And it is equally clear, that property of deceased persons, whilst in the process of administration, and in the hands of executors and administrators, is not thus exempted. Rev. Sts. *c.* 7, §§ 5 and 10, *cl.* 7. It is no doubt true, in this as in many other cases of statute provisions, that the legislature had in view the more usual and common case, of estates of deceased persons in the hands of executors and administrators, where administration has been actually granted, or the will admitted to probate, and letters testamentary issued thereon. But, without expressing any opinion, in regard to letters of administration, where the administrator derives his authority from the letter of administration, neither the letter nor the reason of the law applies to executors, who derive their authority from the will, and where probate is necessary only to give authenticity to the will. Property of the testator is in the legal custody of the executor before probate, and he may exercise many of the powers of an owner over it. Property so situated may be the subject of larceny. Even where there is no will, the property of a deceased person is not derelict ; but is regarded in law as the property of the administrator subsequently appointed, by relation from the time of the decease, so that taking it by any one, *animo furandi*, is larceny. *Wonson* v. *Sayward*, 13 Pick. 402.

It is urged, that the executor could not give in a list, &c. A list is not necessary to the validity of the tax ; but we cannot perceive why the executor could not give in a list. He had the actual and legal custody of the property, and the securities and evidence of property.

But without laying down any rules of more general application, we confine our opinion to the circumstances of the

present case, which are certainly very peculiar. The testator died in December, 1845. The present plaintiff, Austin Smith, was named sole executor and trustee. The will was offered for probate, prior to the assessment of the tax, by the executor, who thereby authoritatively expressed his assent to the will, confirmed by his subsequent appointment. Before any step was taken towards laying or collecting the tax, the executor was appointed special administrator. If he was at that time vested with the power of paying, and whether or not a payment at that stage would have been regarded as the payment of a preferred debt, having a legal priority, or as an incidental expense, it was in the power of such special administrator to take all needful measures to guard and protect the estate from unjust claims. If the estate was liable, then it was a necessary expense, which he might pay and charge as such ; if it was not liable, he might protest against the levy, until the will should be proved. If upon protest and notice to the collector, to the assessors, and to the town for whose benefit the tax was assessed, the collector had persisted in making a distress before the will could be proved, and the estate regularly placed under the administration of an executor or administrator, and such distress were likely to be attended with a great sacrifice of property by a sale at an under value, we are inclined to the opinion, that the special administrator might have paid the tax under protest, as a necessary incidental expense for the preservation of the property, to be recovered back afterwards of any party liable, in case the tax was not rightfully assessed.

But, whether this were so or not, it appears, in the present case, that when the tax was assessed, the plaintiff was named executor and had offered the will for probate; that before it was levied he was appointed special administrator; and that subsequently the will was admitted to probate. The plaintiff was then confirmed as executor, and obtained letters testamentary ; and whatever may have been the extent and limits of his power before probate, this act relates back and proves that the property was in him from the time of the decease of the testator; so that in May, 1846, the

property was in his hands as executor, and not distributed, and was consequently liable to be assessed in the manner in which it was assessed to Austin Smith as executor. It was personal property of a deceased person in the hands of an executor and not distributed, and was assessed to the executor, in the town where the deceased last dwelt; and it was within the letter, and, in our opinion, within the meaning and true construction of the statute. Rev. Sts. *c.* 7, § 10, *cl.* 7.

This case comes to this court upon exceptions from the court of common pleas, where, under the direction of the court, a verdict was taken for the plaintiff. The effect of our view of the law is to sustain the exceptions, and to set aside the verdict. But as the opinion goes to the whole merits of the case, and shows that the plaintiff cannot recover, I suppose it is proper for the plaintiff to consent to a nonsuit. But, if otherwise, the entry here must be, that the verdict be set aside, and a new trial had in this court.